J-S35044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.F., a/k/a M.F. a/k/a M.M.F., a Minor | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.R., Mother | : | No. 2572 EDA 2015 |

Appeal from the Order entered July 9, 2015
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): 51-FN-002085-2011;
CP-51-AP-0000090-2013; CP-51-DP-0000783-2011

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED MAY 06, 2016**

T.R. ("Mother") appeals from the Order granting the Petition filed by the Department of Human Services ("DHS") to involuntarily terminate her parental rights to her minor child, M.F., a/k/a M.M.F. ("Child"), a daughter born in April 2011, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).[1] We affirm.

The trial court aptly summarized the factual and procedural history of this case, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 10/29/15, at 1-3.

Relevantly, on the day Child was born, DHS received a General Protective Service Report indicating concerns regarding Mother's ability to

---

[1] DHS also filed a Petition to change the permanency goal to adoption. After a hearing on July 9, 2015, the trial court involuntarily terminated the parental rights of both Mother and P.F. ("Father"), and changed the permanency goal to adoption. *See* N.T., 7/9/15, at 57-59. Father did not file an appeal. Mother does not challenge the permanency goal change.

care for Child due to her mental health and medical issues. DHS substantiated those concerns and obtained an Order of Protective Custody ("OPC") when Child was discharged from the hospital on April 25, 2011. Child was subsequently placed in foster care. Child was adjudicated dependent on May 4, 2011. Mother was granted supervised visitation, and DHS developed a Family Service Plan ("FSP") for Mother.

At the first permanency review hearing in August 2011, the trial court found that Mother was in full compliance with the FSP. However, in all subsequent permanency review hearings, the trial court found that Mother had been either moderately or minimally compliant with the FSP, but Mother never met her behavioral health objectives.

On February 12, 2013, DHS filed an Involuntary Termination of Parental Rights ("ITPR") Petition against Mother under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). The trial court conducted a hearing on July 9, 2015, and found that Mother was noncompliant with the FSP. The trial court thereafter terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).[2] Mother filed a timely Notice of Appeal.

On appeal, Mother raises the following questions for our review:

I. Whether the [trial] court erred in failing to find that[,] for the six months immediately preceding the filing of the [P]etition, when [] [C]hild was bonded with [M]other and [] [M]other [had] completed a parenting class, attended Family School, stabilized her mental health issues, was visiting with [] [C]hild, was

_____

[2] At the hearing, Mother stipulated to the facts alleged in the Petition, as well as DHS exhibits 1 through 14. *See* N.T., 7/9/15, at 8-9.

seeking and found housing for herself and [] [C]hild, [that Mother] did not intend to relinquish her claim to [] [C]hild or refused and/or failed to perform parental duties[?]

II. Whether the [trial] court erred in failing to find that for the six months immediately preceding the filing of the [P]etition, [] [C]hild was bonded with [Mother] and [] [M]other [had] completed a parenting class, attended Family School, stabilized her mental health issues, was visiting with [] [C]hild, [and] was seeking and found housing for herself and [] [C]hild[?]

III. Whether the [trial] court erred in finding that there were repeated and continuing findings of incapacity, abuse, neglect and/or dependency of [] [C]hild by [] [Mother], when [] [C]hild was bonded with [Mother] and [] [M]other [had] completed a parenting class, attended Family School, stabilized her mental health issues, was visiting with [] [C]hild, [and] was seeking and found housing for herself and [] [C]hild[?]

IV. Whether the [trial] court erred in finding that the conditions which led to the removal or placement of [] [C]hild continue to exist, as to [Mother], when [] [C]hild was bonded with [Mother] and [] [M]other [had] completed a parenting class, attended Family School, stabilized her mental health issues, was visiting with [] [C]hild, [and] was seeking and found housing for herself and [] [C]hild[?]

V. Whether the [trial] court erred in finding that the conditions which led to the removal or placement of [] [Child] continue to exist[,] and termination of parental rights would best serve the needs and welfare of [] [C]hild, when [] [M]other can remedy the conditions within a reasonable period of time, and when [] [C]hild was bonded with [Mother] and [] [M]other [had] completed a parenting class, attended Family School, stabilized her mental health issues, was visiting with [] [C]hild, [and] was seeking and found housing for herself and [] [C]hild[?]

VI. Whether the [trial] court erred in finding that DHS made[] reasonable efforts towards reunification, by either failing and/or refusing to help find a viable option or to consider options other than terminating [M]other's parental rights, when [] [C]hild was bonded with [Mother] and [] [M]other [had] completed a parenting class, attended Family School, stabilized her mental

health issues, was visiting with [] [C]hild, [and] was seeking and found housing for herself and [] [C]hild[?]

VII. Whether the [trial] court erred in terminating the rights of [M]other, when the sole reason [she] was unable to obtain housing[] [and] provide medical care for the care and maintenance of [] [C]hild, was [her] lack of income[?]

VIII. Whether the [trial] court erred in terminating the rights of [] [M]other where it was not supported by clear and convincing evidence and [was] not in the best interest of [] [C]hild, and there was a bond between [] [M]other and [C]hild[,] and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of [] [C]hild, pursuant to 23 Pa.C.S.A. [§] 2511(b)[?]

Mother's Brief at 3-4.

We review an appeal from the termination of parental rights in accordance with the following standard:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden rests upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and

- 4 -

convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If the competent evidence supports the trial court's findings, "we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Satisfaction of any one subsection of Section 2511(a), along with consideration of Section 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Mother's parental rights based upon Section 2511(a)(1) and (b), which state the following:

> **§ 2511. Grounds for involuntary termination.**
>
> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. … [P]arental duty is best understood in relation to the needs of a child. … [T]his court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires a continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In the Interest of J.T.*, 983 A.2d 771, 776-77 (Pa. Super. 2009) (internal quotations and citations omitted).

In her first seven claims, Mother asserts that the trial court erred in granting the ITPR Petition because DHS did not satisfy by clear and convincing evidence that her parental rights should be terminated under Section 2511(a). Mother's Brief at 7. As to the requirements of subsection (a)(1), Mother argues that the trial court did not specifically discuss the relevant six-month time period. *Id.* at 8-9. Mother claims that she completed her FSP objectives by obtaining mental health treatment and drug therapy, attending parenting classes, completing the Parenting Capacity

Evaluation, and visiting with Child. *Id.* at 9. Mother also argues that her visits with Child were limited by supervision requirements and her mental health treatment. *Id.* at 10.

In its Opinion, the trial court addressed Mother's first seven claims, set forth the relevant law, and concluded that her claims lack merit. *See* Trial Court Opinion, 10/29/15, at 5-10. Upon review, we conclude that the trial court appropriately applied Section 2511(a)(1), and we adopt its Opinion. *See id.* at 5-8.

In her eighth claim, Mother asserts that the trial court's determination that termination was in the best interests of Child was not supported by clear and convincing evidence. Mother's Brief at 8. Mother claims that there was no expert testimony relating to the best interests of Child, or the bond between Mother and Child. *Id.* at 13-14. Additionally, Mother argues that she has made progress to alleviate the conditions that led to Child's placement. *Id.* at 13.

In its Opinion, the trial court addressed Mother's final claim, set forth the relevant law regarding Section 2511(b), and determined that it was in Child's best interest to terminate Mother's parental rights. *See* Trial Court Opinion, 10/29/15, at 10-11. Upon our review, we conclude that the trial court appropriately applied Section 2511(b) to this case, and we adopt its Opinion for the purpose of this appeal. *See id.*

Based upon the foregoing, the trial court did not err in granting the ITPR Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2016



**IN THE COURT OF COMMON PLEAS**

**FOR THE COUNTY OF PHILADELPHIA**

**FAMILY COURT DIVISION**

In re: In the Interest of M.F.           : CP-51-AP-0000090-2013

                                    CP-51-DP-0006783-2011

                                    : 51-FN-002085-2011

APPEAL OF: T.R. Mother                 : 2572 EDA 2015

**OPINION**

**Fernandes, J.:**

Appellant T.R ("Mother"), appeals from the order entered on July 9, 2015, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate Mother's parental rights to M.F. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1), (2), (5), (8), and (b). Athena M. Dooley, Esquire, counsel for Mother, filed a timely Notice of Appeal with a Statement of Errors Complained Of pursuant to Rule 1925(b).

**Factual and Procedural Background**

On April 18, 2011, the Department of Human Services ("DHS") received a General Protective Service ("GPS") report alleging concerns regarding Mother's ability to appropriately care for the Child. Mother had a history of residential instability and was non-compliant with medication prescribed to treat her ongoing mental and medical illnesses. It was further alleged that Mother was admitted to Caton Village on March 25, 2011, and tested positive for drugs. Mother left the facility against medical advice. It was alleged that Mother was diagnosed with bipolar disorder and depression. Mother had other two children that were raised by her relatives. The report was substantiated. On April 18, 2011, DHS went to Temple University Hospital where Child was born. DHS learned that Mother suffered from mental illness and a life threatening illness, left Caton Village against medical advice, refused to comply with a mental health evaluation, denied having a life threatening illness to the doctors. Mother stated to DHS that she began residing at Caton Village because she previously resided in a room that drug users frequented. Mother admitted having problems with alcohol in the past. On April 20, 2011, DHS learned that Mother had an extensive history of enrolling in mental health and substance abuse treatment programs.

On April 25, 2011, Child was discharged from Temple University Hospital and DHS obtained an Order of Protective Custody ("OPC") for the Child, and placing her in foster care through Best Nest. On April 27, 2011, at a Shelter Care hearing, the trial court lifted the OPC, ordered a temporary commitment to DHS to stand, and referred Mother to the Clinical Evaluation Unit ("CEU") for assessment and forwith drug screen. Mother was also referred to the Behavioral Health System ("BHS") for appropriate intervention and Achieving Reunification Center ("ARC"). On May 4, 2011, the Child was adjudicated dependent and committed to DHS. Mother's was granted weekly supervised vitiation twice a week at the agency. The trial court also ordered Mother to be referred to the Behavioral Health System ("BHS"), CEU and the Achievement Reunification Center ("ARC"). Mother was also ordered to participate in Child's medical appointments. On May 19, 2011, Mother's initial Family Service Plan ("FSP") was developed. Mother's FSP objectives were to keep all visits and maintain regular contact with her Child; to meet regularly with the agency social worker and to comply with the Individual Service Plan ("ISP"). Additional objectives for Mother were to comply with drug and alcohol treatment recommendations made by the provider; to sign an authorization form allowing DHS to receive copies of drug and alcohol evaluation and progress report; to participate in mental health evaluation, comply with all treatment recommendations, including therapy and/or medication as prescribed, to attend Child's medical appointments and to complete parenting classes at ARC.

On August 2, 2011, at a Permanency Review hearing, Mother's visitation remained supervised twice a week at the agency. The trial court found that Mother had a BHS evaluation with recommendations for referral to Cohmar for services. The trial court also found that Mother attended the Wedge for mental health treatment and was compliant with all her services. Mother completed parenting classes. As a result, Mother was found in full compliance with her FSP. Additionally, Mother was ordered to attend all medical appointments for the Child, to continue treatment at Cohmar and the Wedge, and comply with all other objectives. On November 9, 2011, at a Permanency Review hearing, Mother was granted two hour weekly unsupervised visitation at the agency. The trial court further found that Mother was receiving medication management, drug and alcohol services through the Wedge. The trial court found Mother in moderate compliance with her FSP. DHS was ordered to refer Mother to Family School, CEU, and to complete the second part of her parenting capacity evaluation. Mother was also ordered to attend Child's medical appointments.

On February 8, 2012, at a Permanency Review hearing, Mother was found in minimal compliance with her FSP. The trial court found that Mother was compliant with her parenting classes, she was attending Family School and completed the program at the Wedge. CEU's non-compliance report from February 2, 2012, was incorporated by reference, and Mother's second part of her parenting capacity evaluation was outstanding and scheduled. The report established that Mother tested positive for PCP. (DHS Exhibit 8). On May 9, 2012, at a Permanency Review hearing, Mother was again found in minimal compliance with her FSP. Mother completed her bonding evaluation and was compliant with Family School rules. However, the trial court also found that Mother discharged herself from the Wedge against medical advice. Mother was re-referred to the CEU. On March 12, 2013, Mother was found in minimal compliance with her FSP. Mother's visits were bi-weekly supervised at the agency. On July 19, 2012, Family School terminated Mother's services due to her combative behavior and failure to follow Family School. On July 31, 2013, at a Permanency Review hearing, Mother was found in moderate compliance with her FSP. Mother's visitation remained bi-weekly supervised for one hour. The trial court found that Mother was receiving mental health services at the Wedge. DHS was ordered to re-refer Mother to the CEU, for a new parenting capacity evaluation, and for parenting classes. Mother was ordered to sign releases.

On January 8, 2014, Mother's visitation remained bi-weekly supervised at the agency. The trial court found that Mother did not comply with the second part of the parenting capacity evaluation. On July 7, 2014, at a Permanency Review hearing, the trial court found Mother in moderate compliance with her FSP. Mother was re-referred to the CEU and BHS for evaluation and consultation. On November 5, 2014, Mother's visitation continued to be bi-weekly and supervised at the agency. Mother was again referred to the CEU. On April 9, 2015, Mother was found in minimal compliance with her FSP. Mother was also referred to BHS and ordered to sign releases. Mother's therapist was ordered to provide a treatment plan and a progress report to DHS. On July 9, 2015, the trial court found Mother non-compliant with her FSP. Mother did not comply with her parenting capacity recommendations, mental health, parenting classes, drug and alcohol counseling, Family School, visitation and did not have appropriate housing. On July 9, 2015, the trial court terminated Mother's parental rights. During the hearing, the parties stipulated as to the facts contained in the goal change and termination petitions and also as to the DHS exhibits. (N.T. 07/09/15, pgs. 8-9). On August 7, 2015, Mother's attorney filed a timely notice of appeal.

**Discussion:**

On appeal, Mother raises the following issues:

1. The court erred in failing to find that for the six months immediately preceding the filing of the petition, when appellant Mother's Child was bonded with her and appellant Mother completed a parenting class, attended Family School, stabilized her mental health issues, was visiting with her Child, was seeking and found housing for herself and her Child, and did not intend to relinquish her claim to her Child or refused and/failed to perform parental duties.

2. The court erred in failing to find that for the six months immediately preceding the filing of the petition appellant Mother had consistent contact and visits with her Child, appellant Mother's Child was bonded with her and appellant Mother completed parenting class, attended Family School, stabilized her mental-health issues, was visiting with her Child, and was seeking and found housing for herself and her Child.

3. The court erred in finding that there were repeated and continuing findings of incapacity, abuse, neglect and/or dependency of this minor Child by appellant Mother, when appellant Mother's Child was bonded with her and appellant Mother completed a parenting class attended Family School, stabilized her mental health issues, was visiting with her Child, and was seeking and found housing for herself and her Child.

4. The court erred in finding that the conditions which led to the removal or placement of the Child continue to exist, as to Mother, when appellant Mother's Child was bonded with her and appellant Mother completed a parenting class attended Family School, stabilized her mental health issues, was visiting with her Child, and was seeking and found housing for herself and her Child.

5. The court erred in finding that the conditions which led to the removal or placement of the Child continue to exist and termination of parental rights would best serve the needs and welfare of the Child, when appellant Mother can remedy the conditions within a reasonable period of time, and when Mother's Child completed a parenting class, attended Family School, stabilized her mental health issues, was visiting with her Child, and was seeking and found housing for herself and her Child. .

6. The trial erred in finding that DHS made reasonable efforts towards reunification, by either failing and/or refusing to help find a viable option or to consider options other than terminating Mother's parental rights, when Mother's Child was bonded with her and appellant Mother completed a parenting class attended Family School, stabilized her mental health issues, was visiting with her Child, and was seeking and found housing for herself and her Child.

7. The court erred in terminating the rights of appellant Mother, when the sole reason she was unable to obtain housing, and provide medical care for the care and maintenance of the Child, was her lack of income.

8. The court erred in terminating the rights of appellant Mother where it was not supported by clear and convincing evidence and not in the best interest of the Child, and there was a bond between appellant Mother and Child and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of the Child, pursuant to 23 PaCSA section 2511 (b).

For purposes of this opinion, all appeal issues will be consolidated as whether the trial court abused its discretion under 23 Pa.C.S.A. (a). (1), (2), (5), (8), and (b). Mother did not appeal the change of goal to adoption; therefore, she has waived this issue on appeal. It should noted that Mother stipulated to the facts in the petitions and that the social workers would testify as stated. Mother also stipulated to all the DHS exhibits entered into evidence. (N.T. 07/09/15, pg. 8-9).

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511 (a). The Adoption Act provides the following grounds for §2511 (a) (1):

**(a) General rule -** The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination.

*In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999). In Pennsylvania, a parent's right to custody and rearing of his child is converted upon failure to fulfill his or her parental duties to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, and safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

DHS filed its petition to terminate Mother's parental rights on November 5, 2014. During the last six months, immediately preceding the filing of the petition, Mother has continuously failed to perform her parental duties. Nonetheless, as required in *In re B.N.M.*, the court considers the entire case history. DHS developed Mother's goals and objectives as part of her FSP, and Mother was aware of them. (N.T. 07/09/15, pg. 22). Mother's objectives were to comply with her mental health treatment, drug and alcohol, parenting classes, parenting capacity evaluation and recommendations, visitation, to obtain appropriate and safe housing and sign releases. (N.T. 07/09/15, pgs. 13-14, 18, 20). As to mental health, Mother's first parenting capacity evaluation dated April 17, 2012, established that Mother suffered from a mood disorder. (DHS Exhibit 10). Mother's second parenting capacity evaluation performed on February 10, 2014, indicated that Mother had a potential bi-polar disorder and a past mood disorder. (DHS Exhibit 14). Mother was also diagnosed with atypical psychosis. (DHS exhibit 12). In both parenting capacity evaluations Mother denied her mental health issues. (DHS Exhibit 10 & 14). During the life of the case, Mother compliance with her mental health objective reached moderate compliance. (N.T. 07/09/15, pg. 17). However, Mother's lack of attendance and inconsistency has been a barrier for the successful completion of her mental health objective. On May 9, 2012, the trial court found that Mother discharged herself from the Wedge against medical advice. (DHS exhibit 12). During the last fifteen months Mother has been non-compliant with her mental health services and she still denies her mental health issues. (N.T. 07/09/15, pgs. 17, 49). Mother never signed releases as to her

mental health and medical records. (N.T. 07/09/15, pgs. 32-33). Mother's bizarre behavior throughout the life of the case has raised a great concern for the trial court as to Mother's mental health stability. Mother has provided invalid telephone numbers, sprayed perfume on a DHS social worker, requested a percentage of Child's kinship payments, and made unannounced visits and unrealistic statements. (N.T. 07/09/15, pgs. 25-26, 29, 35). Additionally, Mother's behavior in the courtroom was disruptive. (N.T. 07/09/15, pgs. 6, 7, 11-13, 19-20, 55, 58-59).

As to Mother's drug and alcohol objective, during the last 15 months of the case, Mother has been non-complaint. (N.T. 07/09/15, pg. 18). Mother has not complied with the screens requested by DHS social worker and has not enrolled in drug and alcohol treatment. (N.T. 07/09/15, pgs. 18, 34). In regard to Mother's parenting classes, the record established that Mother was dismissed from Family School unsuccessfully. (N.T. 07/09/15, pgs. 20-21, 33). Mother admitted that, after her discharge from Family School, she has not enrolled in other parenting classes. (N.T. 07/09/15, pg. 53). Additionally, her behavior at Family School was also very disruptive. (N.T. 07/09/15, pg. 34). As a result, Family School requested that Mother address her mental health issues before she would be able to return. (N.T. 07/09/15, pg. 34). The record established that Mother attended two parenting capacity evaluations on April 17, 2012, and February 10, 2014. However, Mother never complied with any of the recommendations made by the parenting capacity evaluations. (N.T. 07/09/15, pg. 19). Mother's parenting capacity evaluations recommended Mother to participate in classes to increase her parenting skills, to engage in mental health treatment, to attend random drug tests and to follow all the recommendation made by DHS as to housing. (DHS Exhibits 10 & 14).

As to Mother's visitations, the record revealed that she was provided with visitation schedules, and Mother was aware of when and where her visitations would take place. (N.T. 07/09/15, pg. 39). Between April 9, 2015, and July 9, 2015, Mother only attended two visits despite being granted bi-weekly visitation. Mother never reached a point to obtain unsupervised visitation. (N.T. 07/09/15, pgs. 21-22). During the life of the case, Mother did not obtain appropriate housing. Mother provided DHS with three different addresses that were all across from a Septa depot for public transit buses and no resident of nearby homes recognized Mother as living in the area. (N.T. 07/09/15, pgs. 16, 30-31).

Excluding the Permanency Review order from August 2, 2011, in which Mother was found in full compliance with her FSP, Mother's compliance with her FSP has not exceed moderate compliance.

Throughout the life of the case, the trial court found Mother to be minimally complaint with her FSP on February 8, 2012, May 9, 2012, March 12, 2013, April 9, 2015 and July 9, 2015. Mother was found in moderate compliance on November 9, 2011, July 31, 2013 and July 7, 2014. Mother's lack of compliance continued for at least six months prior to the filing of the termination petition. Mother has failed to achieve her FSP goals during the life of the case, although her FSP objectives have remained substantially the same throughout. As a result, the trial court found that Mother evidenced a settled purpose of relinquishing her parental claim, and refused or failed to perform parental duties during the six-month period immediately preceding the filing of the petition as required by §2511 (a) (1) of the Adoption Act. DHS has met its burden of clear and convincing evidence.

The trial court also terminated Mother's parental rights under the Adoption Act at 23 Pa.C.S.A. §2511(a) (2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. _Adoption of C.A.W._, _683_ A.2d 911, 914 (Pa. Super. 1996).

The record established that Mother has been unable to provide her Child with the essential parental care, control, and subsistence necessary for her mental and physical well-being, since April 25, 2011, when the Child was removed from Mother. (DHS Exhibit 2), (N.T. 07/09/15, pg. 13). As a result, more than forty-nine months have not been enough for Mother to achieve her FSP objectives. (N.T. 07/09/15, pgs. 13, 17-22, 34, 49). Under Mother's current circumstances, she is unable to remedy the causes of her incapacity in order to provide the Child with essential parental care, control or subsistence necessary for Child's physical and mental well-being. After all these months in foster care, the Child needs permanency, which Mother cannot provide at this moment. Consequently, DHS has met its burden under §2511 (a) (2) of the Adoption Act.

The trial court also granted DHS' request for termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby a child may be removed, by court or voluntary agreement, and placed with an agency at least six months, if conditions which led to the placement of the child continue to

exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and/or termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The record indicated that Mother has been unable to assume her parental duties since the Child's removal from Mother's home on Abril 25, 2011. Accordingly, Mother's incapacity and reluctance to assume her parental responsibilities throughout the entire life of the case has led the Child to remain in foster care. The Child has been in foster care for more than forty-nine months. It is clear that after all this time, Mother has failed to comply with her mental health treatment, drug and alcohol, parenting classes, parenting capacity evaluation and recommendations, visitation, to obtain appropriate and safe housing and sign releases. (N.T. 07/09/15, pgs. 13, 17-22, 34, 49). Mother has been given more than ample time to place herself in a position to be a parent to this Child, but she has failed to do so. The trial court found that DHS made reasonable efforts to reunify Mother and Child on August 2, 2011, November 9, 2011, February 8, 2012, May 9, 2013, March 12, 2013, July 31, 2013, January 8, 2014, July 7, 2014, April 9, 2015 and July 9, 2015. Mother was aware of her FSP objectives. (N.T. 07/09/15, pg. 22). It is in the best interest of the Child to have a stable, nurturing, and permanent environment. (N.T. 07/09/15, pgs. 26-28). Conditions that led to the placement of the Child continue to exist, and Mother cannot remedy them within a reasonable period of time. DHS has met its burden under §2511 (a) (5) of the Adoption Act.

As to §2511 (a) (8) of 23 Pa.C.S.A., DHS also met its burden by clear and convincing evidence that Child has been out of Mother's care for more than forty-nine months, the conditions leading to the placement still exist, and termination would best serve the needs and welfare of the Child. Child has been continuously under DHS custody for a period of more than forty-nine months.

(N.T. 07/09/15, pg. 13). The conditions that led to the Child's placement still exist. Child was placed in foster care due to Mother's lack of parental skills, mental health and drug issues. (DHS Exhibit 2). Despite the good faith efforts of DHS to make services available, it is in the best interest of the Child to terminate Mother's parental rights.

As to the second element of Section 2511 (a) (8) that the conditions, which led to the Child's removal, continue to exist, DHS has also met its burden. As in *In re: Adoption of K.J.*, 938 A.2d 1128, 1133 (Pa. Super. 2009), a termination of parental rights under section 2511 (a) (8) does not require the court to evaluate a parent's willingness or ability to remedy which initially caused placement or the availability or efficacy of DHS services offered to Mother. In this case, the trial court found that Mother had failed to remedy the conditions that led to the removal of the Child, particularly her mental health issues, drug and alcohol issues, lack of parenting skills, and lack of appropriate housing and stability. As the parenting capacity evaluations established, Mother does not have the capacity to provide safe and permanent placement for her Child. (DHS Exhibit 14).

As to the third element of Section 2511 (a) (8), the party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. *In re Bowman*, 436 Pa. Super. 647, A.2d 217 (1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). The Child has been in her respective pre-adoptive home for a long time. The Child is in a safe home and stable environment with foster parents providing for all her needs. The Child needs permanency. Termination of Mother's parental rights and adoption would best serve the needs and welfare of the Child. The testimony of the DHS witnesses was credible.

Pursuant to 23 Pa.C.S.A. §2511 (b), the trial court must also consider what, if any, bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.*, 387, 397 (Pa.Super.2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). Under 23 Pa.C.S.A. §2511 (b), the rights of a parent shall not be terminated

solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The record established that Child will not suffer any irreparable harm by terminating Mother's parental rights, and it is in the best interest of the Child to terminate Mother's parental rights. (N.T. 07/09/15, pgs. 24, 26, 38). Conversely, removing the Child from foster parents would cause irreparable harm to the Child. (N.T. 07/09/15, pg. 23-24). The Child is extremely bonded to her foster parents and calls them "mom" and "dad". (N.T. 07/09/15, pgs. 23, 26, 28). Child and foster parent have a typical parent/child bond. Child is very happy, healthy, comfortable and secure. (N.T. 07/09/15, pgs. 26-27). The Child has been with her foster parents since she was 15 days old. (N.T. 07/09/15, pg. 28). Mother and Child have a bond but it is not a positive parent/child bond worth serving. (N.T. 07/09/15, pgs. 24, 37). Despite the fact that Child is happy to see her biological Mother at visitation, Child is able to be separated from her biological Mother with no problem. (N.T. 07/09/15, pg. 41). The Child needs, such as educational and medical, are satisfied by her foster parents. (N.T. 07/09/15, pg. 23). Mother's parental rights are not being terminated on the basis of environmental factors. Child has been in foster care for too long and needs permanency. The testimony of DHS and agency social workers was credible.

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511 (a) and (b). The court also finds that it will not cause irreparable harm to the Child to sever any bond, and it is in the best interest of the Child, since it would best serve her emotional needs and welfare. Accordingly, the order entered on July 9, 2015, terminating the parental rights of Mother T.R., should be affirmed.

By the court

Joseph Fernandes, J.